GRAZIANO ET AL., APPELLEES, *v.* DAVIS ET AL., APPELLANTS.

[Cite as Graziano v. Davis (1976), 50 Ohio App. 2d 83.]

(No. 76 CA 15—Decided October 13, 1976.)

*Mr. C. Kenneth Clark,* for appellants.

*Mr. Frank Graziano* and *Mrs. Sylvia Graziano, in propria persona.*

DONOFRIO, J. Appeal from the Court of Common Pleas, Juvenile Division, Mahoning County, Ohio.

The facts of this case begin with an action being brought under R. C. 3109.11 by plaintiffs, appellees herein, Mr. and Mrs. Frank Graziano, for visiting rights with Frank Joseph Davis, now five years of age, and Michael

James Davis, now four years of age. A hearing was held before the referee of Juvenile Court who made findings of fact and recommendations which were adopted by the trial court. Among the findings of fact adopted by the trial court was that the subject children are the natural children of Frank Graziano and Marie Graziano (now known as Marie Davis, one of the defendants). The children's father died in an automobile accident on April 22, 1972. The plaintiffs are the paternal grandparents of the children. Defendants are Marie Davis, the mother, and Larry Davis, who were married on May 19, 1973, a little over a year after the death of the children's father.

Defendant Larry Davis, subsequent to the filing of this action, petitioned the Court of Common Pleas to adopt the subject children as his own. The parties stipulated that the petition was granted and he is now the adoptive father of the children.

During some portion of the time that the children's mother was dating their now deceased father she lived with his grandmother. After their marriage, they took up residence in a home owned by the plaintiffs and next door to them. There was constant visiting back and forth, the plaintiff grandparents seeing and giving attention to the children daily. The plaintiffs described their relationship to their son as normal and to their daughter-in-law as excellent. They demonstrated much affection, love and attention to the children.

Defendant Marie Davis disputes this, claiming that the parents did not love their son, paid little attention to him, and visited the subject children out of motives of guilt feelings over their treatment of their own son and to spite their son.

Numerous friends and neighbors of the plaintiffs, most of whom were well acquainted with plaintiffs and their son, testified that the plaintiffs are highly respected persons in the community, well liked and easy to get along with. They described the relationship with the plaintiffs and their son as normal. With respect to the plaintiffs' attitude with their grandchildren, they pictured it as typical of grandparents: pride, love and enjoyment.

The referee accepted the plaintiffs' version as being much more credible. Joined with the testimony of other witnesses, their version was established as fact.

After the death of the children's father in April 1972, when the children were 1½ years and 6 months old, the mother continued to reside next to the plaintiffs for two or three months. During this time, plaintiffs' frequent and regular visiting continued much as before. Then, in June or July of 1972, Marie Davis suddenly moved to another address, never telling the plaintiffs that she was moving and taking the children with her. This began a series of searches on behalf of the plaintiffs. Contact with the defendant mother led to a denial of further visits by her, and there was a series of residence changes without notice to the grandparents. At no time did the mother inform the grandparents of her moves, or of her marriage in 1973 to defendant Larry Davis.

The finding, as adopted by the trial court, stated:

"Considering the evidence love and affection of the plaintiffs for the children, their past close relationship with the children, and the kind of people they appear to be, a resumption of visits and the possible re-establishment of that relationship is in the best interests of the children."

The trial court ordered reasonable visitation rights for plaintiffs with the children, and it is from this order that defendants appeal, setting forth four assignments of error.

In lieu of a transcript of testimony, a statement of evidence was prepared in accordance with Appellate Rule 9(C) and was approved and filed herein.

The statement of evidence essentially states the facts as hereinbefore stated. Defendants set forth four assignments of error as follow:

"1. The court erred in holding that Ohio Revised Code Section 3109.11 may be applied after the children have been adopted by their stepparent.

"2. The court erred in adopting as a controlling proposition of law (Recommendation No. 2) that in general, the visitation and companionship of a child's grandparents are in a child's best interests.

"3. The court erred in ruling and finding (Recommendation No. 2; Finding of Fact No. 21) that Ohio Revised Code Section 3109.11 creates any *right* of visitation.

"4. The court erred in finding that visitation is in the best interests of the children in the absence of any evidence to support that finding."

In support of their contention, defendants cite *In re Biddle* (1958), 168 Ohio St. 209, paragraph three of the syllabus:

"A final decree of adoption results, under the provvisions of Section 3107.13, Revised Code, in terminating the child and parent relationship between the child and its natural parents and creating an entirely new child and parent relationship between the child and its adoptive parents."

In their brief, defendants follow their theory and contentions with authorities from other states, tracing the history and comparing various state sections that are similar or close to the Ohio statutes involved in the instant case, citing such authorities as Kansas. Kan. Stat. Anno. 38-129 is identical to R. C. 3109.11 except that the "parents" rather than the "relatives," as in R. C. 3109.11, of a deceased father or mother of an unmarried minor child may be granted reasonable visitation rights. In *Browning* v. *Tarwater* (1974), 215 Kan. 501, 524 P. 2d 1135, the Supreme Court of Kansas was presented with the question of whether visitation rights which had previously been granted under Kan. Stat. Anno. 38-129 to a natural paternal grandmother were required to be terminated after the adoption of the child by the second husband of the child's mother. The court took the position that the visitation statute could not be applied after the adoption.

At this juncture, we must also note that the referee in his report to the judge did an exhaustive study of the laws and authorities involved, making an extensive finding of fact and discussion of the applicable law. The referee should also be commended for his presentation to the trial court, which resulted in the trial court's adopting the referee's report as a final order.

We begin the resolution of the issues involved in this

case by citing *In re Griffiths* (1975), 47 Ohio App. 2d 238, a case decided by this court. The first four paragraphs of the syllabus of that case state:

"1. In general, the visitation and companionship of a child's grandparents are in a child's best interests.

"2. If the father or mother of an unmarried minor child is deceased, R. C. 3109.11 vests in the relatives of the deceased person reasonable companionship and visitation rights to the minor child during the minority and vests in the minor child the right to the companionship and visitation of its relatives.

"3. The companionship and visitation rights vested by R. C. 3109.11 are neither absolute nor unqualified but are conditioned upon the finding by a court of competent jurisdiction that such rights are in the best interests of the child.

"4. The companionship and visitation rights of relatives granted in R. C. 3109.11 are subservient to the best interests of the minor child."

In that case, this court held that the visitation rights granted by R. C. 3109.11 were not in the best interests of the child, and the trial court was correct in denying the visitation rights to such grandparents.

Although this court reached that result in *In re Griffiths*, that case still stands for the proposition that each case must stand on its own facts with the guidelines established. The test is what is in the child's best interest, vesting in the trial court the power to use its discretion on a case-by-case basis in considering R. C. 3109.11 as to visitation by relatives.

Under the facts of the instant case, framing the issue before us: Does an adoption of a child by a stepparent terminate the power of the court to determine visitation rights of grandparents or relatives under R. C. 3109.11, where, but for the adoption, the court finds such visitation to be in the best interests of the children.

This issue is of first impression in Ohio. We have found no cases exactly in point with the issue framed, nor have any been brought to our attention.

Briefly stated, the defendants' position is that R. C.

3109.11 is not applicable after adoption, which, under Ohio law, gives the child the same status as being born to the adopting parent and not to the natural parent. Defendants cite *In re Biddle, supra,* and offer the reasoning that, under Ohio law, an adopted child no longer has any status with its original parent, and is only the child of the adoptive parents, as such affects the grandparents' visitation rights. Defendants point out that even the birth certificate is made anew by virtue of R. C. 3705.18, reciting the adopting parent as being considered the natural parent.

Because the issue in the instant case is a question of first impression in Ohio, the study of sister states' decisions is in order. There is divided authority. One line of cases holds that adoption by a stepparent terminates the power of the court to grant visitation rights under statutes identical, or nearly so, to R. C. 3109.11. The major difference in such statutes is confined to the persons included as entitled to the visitation rights. Some, like Ohio, refer to "relatives," others refer to the parents of the deceased parent (*i. e.,* grandparents only). Those so holding are exemplified by *Browning* v. *Tarwater* (1974), 215 Kan. 501, 524 P. 2d 1135; *Smith* v. *Trosclair* (1974), —— La. ——, 303 So. 2d 926; *Deweese* v. *Crawford* (1975), —— Tex. Civ. App. ——, 520 S. W. 2d 522; and *People, ex rel. Levine,* v. *Rado* (1967), 54 Misc. 2d 843, 283 N. Y. S. 2d 483.

A second line of decisions is to the contrary, holding that an adoption by a stepparent does not terminate the right to grant or continue such visitations. *Roquemore* v. *Roquemore* (1969), 275 C. A. 2d 912, 80 Cal. Rptr. 432; *In re Zook* (1965), 62 C. 2d 492, 399 P. 2d 53; *Scranton* v. *Hutter* (1973), 40 A. D. 2d 296, 339 N. Y. S. 2d 708; *Mimkon* v. *Ford* (1975), 66 N. J. 426, 332 A. 2d 199.

One explanation for the divided opinion advanced by counsel for defendants rests upon the wording and apparent thrust of the adoption statutes. Some are quite similar to R. C. 3107.13 and refer to the "status" of an adopted child with respect to his adoptive parents and natural parents. Based in part upon that type of wording, the courts of Kansas, Louisiana, and Texas, in the cases cited, have held that adoption terminates the rights of those

claiming through the natural parent. Other adoption statutes seem to place more emphasis on the inheritance and succession rights flowing from or effected by adoption. Based in part on that situation, the courts of California and New Jersey, in the cases cited, have held that the visitation rights survive the adoption.

Another explanation for the disagreement seems just as likely. The courts, like most persons interested in the problem, reflect a basic disagreement as to what is best for the child under the adoption circumstance. The conflict in the New York decisions is one example of that uncertainty.

None of the cases which hold that adoption terminates visitation rights ground their decisions on the basis of the wording of the adoption statutes alone. Each buttresses its decision on the ground that such a result is in the best interest of the child, and is necessary to prevent divided loyalties, third-party interference and confusion. Nor do the cases holding to the contrary rely entirely on principles of statutory construction. They refer to the natural relationships of affection and regard between and among blood relatives, and conclude that those should not be judicially denied when they do not hinder adoptive relationships, violate express statutory provisions, or work against the child's best interests. These decisions avoid any general judicial fiat as to the child's best interests, and allow the circumstances of each case to determine them.

In short, one line of cases holds that as a matter of law the best interests of the child require a termination of such visitation rights when the stepparent adopts the child. The other line of cases holds that the fact of adoption is another factor for the court's consideration in determining an issue of fact in each case, to wit: what serves the best interest of the child.

We find that the legislative intent with regard to the relationship between the adoption statute, R. C. 3107.13, and visitation statutes, R. C. 3109.11, is not clear—even though the same session of the Ohio legislature which enacted R. C. 3109.11 had occasion to review and amend R. C. 3107.13, providing for adoption in two situations: adoption

by husband and wife, and adoption by stepparent. The statute provides that the effect of adoption is to legally substitute adoptive parenthood for that of natural parenthood for all purposes in law. However, there are two exceptions allowed in the case of adoption by a stepparent which are not applicable to an adoption by a husband and wife. R. C. 3107.13 states, in part:

"This section does not debar a legally adopted child from inheriting, under a will identifying such child by any name by which he has been or is known or other clear identification, property of such child's natural parent or parents or other natural kin as in case of bequest or devise to any other person.

"For the purpose of inheritance to, through, or from a legally adopted child, such child shall be treated the same as if he were the natural child of his adopting parents, and shall cease to be treated as the child of his natural parents for the purposes of intestate succession, except where one of the natural parents of such child has died and his living parent remarries and such child is adopted by such stepfather or stepmother, *in which case his right to inheritance from or through his natural parent or other natural kin shall not be affected by his adoption.*" (Emphasis added.)

The Ohio legislature thus recognizes a difference of situation and consequence in the two types of adoption circumstance.

Therefore, with due consideration, we hold that as in *In re Griffiths, supra,* the best interest of a child should be the controlling factor that the trial court must consider and follow. We hold that where there is an adoption as herein stated, the application of R. C. 3109.11 and 3107.13 should be applied on a case-by-case situation, giving the court power in its discretion to grant visiting rights or withhold visiting rights, with the criteria stated, in "the best interest of the child.".

We find that proclaiming a judicial fiat that an adoption, as in the instant case, forever precludes grandparents' visitation would be too strict and arbitrary a rule for us to adopt, and may work against the best interest of the child in some instances.

The primary purpose of R. C. 3109.11 is to serve the best interest of the child—any rights to the relatives are subservient to that purpose—*In re Griffiths, supra*. Where because of the adoption by a stepparent, or for any other reason, the court finds that the visitation allowed by statute may not serve the best interest of the child, the court may then deny such. Taking the best interest of the child as the guiding principle, they are better served by the exercise of judicial discretion on a case-by-case basis than by the rule that stepparent adoption terminates visitation by relatives regardless of the prior relationships, age of the child, existent natural regard and affection, and possible future benefits. We feel that Ohio should adopt a more flexible rule.

Although not a controlling factor, we cannot help but give some expression and thought to the breaking down of family life, and that this phenomenon is a symptom and cause of social disorganization. The overall effect on American society has been devastating. The experts now acknowledge that the increase in teenage drug addition and alcoholism, the rise of suicide in young people, the high delinquency rate are nationwide problems, and, in many instances, these problems can be traced to a stripped-down model of family living. A report in Newsweek magazine, September, 1975, pp. 48-56, stated:

"Few contemporary American families include grandparents, aunts, uncles and cousins—all of whom used to be around like the front porch, to widen the family circle. * * *

"If current trends and parental problems suggest anything at all, however, it is that the stripped-down nuclear family needs support in the rearing of kids. * * *

"In turn, the pressure on today's American family argues strongly for greater reliance upon relatives and friends. * * *"

For the foregoing reasons, we overrule the assignments of error and affirm the judgment of the lower court.

*Judgment affirmed.*

LYNCH, P. J., and O'NEILL, J., concur.