WELSH, APPELLANT, *v.* LAFFEY, ET AL., APPELLEES.

(No. CA83-06-061—Decided April 23, 1984.)

*Mr. Donald C. LeRoy,* for appellant.
*Mr. Lawrence P. Fiehrer,* for appellees.

JONES, J. This appeal concerns the right of a paternal grandparent to visit a grandchild where the parents of the grandchild have dissolved their marriage and the grandchild has been adopted by her stepfather following the remarriage of her mother.

Angela Marie Laffey, hereinafter Angela, was born May 10, 1978, the child of Kathryn Louise Laffey and William Dan Laffey. The marriage between Kathryn Louise Laffey and William Dan Laffey was terminated by dissolution on October 8, 1981. Under the terms of a separation agreement approved and incorporated as a part of the dissolution decree, custody of Angela was awarded to her mother, with reasonable rights of visitation on the part of her father. The agreement also required the father to pay weekly support for his

daughter. The record is clear that the father did not pay support for his child following the dissolution, and did not exercise his rights of visitation. There is also an indication in the record, however, that the mother of the child moved and concealed her whereabouts from her ex-husband in a deliberate attempt to prevent the ex-husband from exercising his rights of visitation.

On February 23, 1982, appellee, Edna V. Laffey, paternal grandmother of Angela, filed a motion in the original domestic relations action, seeking an order granting definite and certain visitation rights with the child. Testimony was taken by a referee of Butler County Common Pleas Court, Division of Domestic Relations. Because the mother of the child objected strenuously to visitation by the child's paternal grandmother, the referee recommended that the grandmother, appellee herein, the mother, appellant herein, and the child all be interviewed by Dr. Roger H. Fisher, Ph.D., a clinical psychologist, for the purpose of making a recommendation to the court. Dr. Fisher conducted such an examination, and on February 18, 1983, filed an eight page report with the court, recommending that visitation with the paternal grandmother be permitted. Meanwhile, however, on November 20, 1982, appellant, Kathryn Louise Laffey, married Robert Charles Welsh, Jr. Two days after the marriage, on November 22, 1982, Welsh filed a petition to adopt Angela. On January 26, 1983, an interlocutory and final order of adoption was filed in the Probate Division of Butler County Common Pleas Court.

On April 27, 1983, the referee filed a comprehensive report, finding that the best interests of Angela would be served by permitting a period of time each week for visitation with her paternal grandmother at the residence of the grandmother. The referee recommended a four-hour period of visitation each week,

at a time to be agreed upon by the parties. The referee suggested a time of 2:00 p.m. to 6:00 p.m. on Sunday, should the parties be unable to agree. Appellant, Kathryn Louise Laffey Welsh, filed objections to the report of the referee on May 2, 1983. On May 24, 1983, the trial judge overruled the objections and adopted the report of the referee as the decision of the court, entering judgment thereon. The sole assignment of error reads as follows:

"The division of domestic relations ruled incorrectly in granting visitation rights to Edna Laffey."

Essentially, appellant claims that the lower court simply had no power to grant visitation rights to the grandparent following a final order of adoption. Appellant also claims that the order granting visitation rights to the paternal grandmother is against the best interests of the child and constitutes an abuse of discretion.

There is little, if any, Ohio case law, directly on point, as to the power of the trial court to grant visitation rights to a grandparent under the circumstances of this case. Appellant relies on R.C. 3107.15 for the proposition that an adoption severs any visitation rights of a former relative. R.C. 3107.15(A)(1) reads, in part, as follows:

"* * * to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and his relatives, including his biological or other legal parents, so that the adopted person thereafter is a stranger to his former relatives for all purposes including inheritance * * *."

Appellee argues, and the trial court apparently agreed, that R.C. 3107.15 does not prohibit the trial court from granting visitation to a grandparent pursuant to R.C. 3109.05, which reads, in part, as follows:

"In the discretion of the court,

reasonable companionship or visitation rights may be granted to *any other person* having an interest in the welfare of the child. * * *" (Emphasis added.)

It is quite clear that the appellee is no longer a "legal" relative of the child born to her son. By the same token, however, the appellee obviously constitutes "any other person," within the facial meaning of R.C. 3109.05. Also, perhaps of significance is R.C. 3109.11, which permits visitation rights of relatives when one of the parents of the child is deceased. R.C. 3109.11 reads as follows:

"If either the father or mother of an unmarried minor child is deceased, the relatives of such deceased person may be granted reasonable companionship or visitation rights to the minor child during its minority by a court of competent jurisdiction upon a finding that such companionship or visitation rights would be in the best interests of the minor child."

Although the whereabouts of the child's father are unknown, except possibly to appellee, there is no indication in the record that he is deceased.

In support of her position, appellant relies, in part, on *In re Biddle* (1958), 168 Ohio St. 209 [6 O.O.2d 4]. The facts in *Biddle, supra,* are somewhat different. The paternal grandparents filed a petition for adoption, which petition was opposed by the child's mother who had custody as the result of a divorce proceeding. The Supreme Court concluded at 215 that:

"* * * a Probate Court has jurisdiction to hear and determine an adoption proceeding relating to a minor child notwithstanding the fact that the custody of such child is at the time within the continuing jurisdiction of a divorce court."

*Biddle, supra,* is clearly distinguishable, as the issue therein simply concerned the power of a probate court to grant adoption when the adoptive child was the subject of a custody order in domestic relations court. In the case at bar, the grandmother seeks only visitation, not adoption. Furthermore, when *Biddle, supra,* was decided, R.C. 3107.09 then specifically provided that the granting of an interlocutory order, or a final decree, terminated the jurisdiction of a divorce court over the child.

Appellant also relies on an unreported case in the Seventh Appellate District, *In re Bitner* (Feb. 24, 1982), Mahoning App. No. 81 C.A. 77, unreported. *Bitner, supra,* was also a case wherein the child was adopted by its stepfather. In *Bitner, supra,* the natural father appealed a probate court order granting adoption to the stepfather. Appellant apparently sought, as alternative relief, an order permitting the paternal grandparents of the adoptive child to visit the child, *as a condition of the adoption.* (Emphasis added.) The trial court granted the adoption and denied the requested visitation privileges. In affirming, the Seventh Appellate District held that the trial court was without authority to order visitation by the grandparents. The court did not specifically mention R.C. 3109.05, but simply said it could find no law or case authority that provides for visitation by relatives other than in R.C. 3109.11 where the parent of a child is deceased. In any event, *Bitner, supra,* by its factual scenario, simply holds that the probate court cannot require visitation rights with a grandparent as a condition of an adoption by a stepparent. In *Graziano* v. *Davis* (1976), 50 Ohio App. 2d 83 [4 O.O.3d 55], visitation rights were granted to the paternal grandparents, even though the children had been subsequently adopted by a stepfather, after the death of the natural father. In *Graziano, supra,* at 87, the appellate court considered the following issue:

"Does an adoption of a child by a stepparent terminate the power of the court to determine visitation rights of grandparents or relatives under R.C. 3109.11, where, but for the adoption,

the court finds such visitation to be in the best interests of the children?''

The Seventh Appellate District considered various cases from other states, and recognized a division of authority on the question. The court ultimately concluded that such issues should be handled on a case by case basis, with the trial court retaining jurisdiction to grant visitation, whenever the best interests of the child would be served. The court was unwilling to proclaim a judicial fiat that an adoption would forever preclude visitation by the grandparents and that such a rule would be too strict and arbitrary, and might work against the best interests of the child in certain instances.

In the case at bar, the trial court found *Graziano, supra,* to be persuasive, and we agree. Adopting the logic of *Graziano, supra,* we find that there are just as valid compelling reasons to permit visitation by paternal grandparents in instances where the father of the child has disappeared or his whereabouts are unknown, as if he were deceased. The adoption by the stepfather should not deprive the natural paternal grandparents of visitation rights, if the best interests of the child would be served by granting such visitation. It should also be kept in mind that there is nothing permanent about the granting of visitation rights to the paternal grandparents, as in the case at bar. Should it be determined at any future time that visitation by the appellee would be detrimental in any way to Angela, it is certainly within the continuing jurisdiction of the court to modify its former order and deny visitation thereafter.

One can imagine many situations where it would be totally cruel to deny visitation rights to the grandparents, simply because the grandchild has been adopted by a stepparent. Consider a hypothetical situation wherein the grandchild is a lad ten years of age, that he is neglected by both parents, and receives love and affection only from his grandparents, whether they be maternal or paternal. Further assume a divorce and remarriage with adoption by a cruel stepfather having little interest in the child. In such a hypothetical situation the adopted child could easily acquire a distorted outlook on life, simply by being deprived of the only love and affection he had ever known. The probate and domestic relations divisions of common pleas court can act independently, but the mere fact that a probate division has granted adoption should not preclude domestic relations division from granting visitation under the somewhat unusual facts of this case. In the case at bar, the appellee sought visitation rights in the domestic relations division long before the adoption proceedings were filed in the probate division. Considering the adamant opposition shown by Angela's mother, it is certainly within the realm of reason to believe the adoption proceedings were instituted for the express purpose of thwarting visitation with appellee. If the words "any other person" used in R.C. 3109.05 are to have any meaning at all, Angela's paternal grandmother must logically qualify. We affirm the decision of the trial court.

*Judgment affirmed.*

KOEHLER, P.J., and ZIEGEL, J., concur.

ZIEGEL, J., retired, of the Court of Common Pleas of Preble County, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.