DRENNEN, APPELLEE, *v.* DRENNEN; CARROLL, APPELLANT.

(No. E-88-7—Decided August 26,1988.)

*Kenneth E. Bogden,* for appellee.
*Richard DeLamatre,* for appellant.

*Per Curiam.* This cause is before the court on appeal from a judgment of the Erie County Court of Common Pleas, Domestic Relations Division.

On October 24, 1986, Hester M. Carroll, movant-appellant and paternal grandmother of Melissa Miano, a minor, intervened in the then-final divorce case between her son, Lee E. Drennen, and plaintiff-appellee, Jane Marie Drennen Herold, and filed a motion for court-ordered visitation pursuant to R.C. 3109.05(B). An evidentiary hearing on the matter was held April 28, 1987 before a referee. The referee filed her report on October 16, 1987, and recommended that appellant's motion be denied, stating that "* * * in light of the evidence presented, the Court finds that it would not be in the best interests of the child to begin visitation with the grandmother at this time. * * *" After considering appellant's objections to the referee's report, the court, on January 20, 1988, overruled the objections and approved and adopted the referee's report in its entirety.

Appellant timely appealed and asserts the following assignments of error:

"1. The trial court committed prejudicial error in overuling [*sic*] the objections to the referee's report and approving the report of the referee and making the report an order of the court.

"2. The trial court committed prejudicial error in admitting into evidence the fact of and the details of Lee Drennen's crime."

In her assignments of error, appellant contends that the trial court erred in denying her request for visitation with the minor child. Appellant

submits that the trial court did not consider the best interests of the child and that prejudicial error was committed by the admission into evidence of her son's crime.

Grandparents have no inherent visitation rights with grandchildren or a constitutional right of association with them. *In re Schmidt* (1986), 25 Ohio St. 3d 331, 25 OBR 386, 496 N.E. 2d 952; *In re Whitaker* (1988), 36 Ohio St. 3d 213, 215, 522 N.E. 2d 563, 566. However, pursuant to R.C. 3109.05 (B), a court has discretion to grant reasonable companionship or visitation "* * * to any other person [not a parent of the child] having an interest in the welfare of the child * * *" in a divorce, dissolution of marriage, alimony or child support proceeding.

The standard a court must use in making its decision whether to order visitation is to determine whether the visitation is in the child's best interests. *In re Whitaker, supra,* at 216-217, 522 N.E. 2d at 567; *Welsh* v. *Laffey* (1984), 16 Ohio App. 3d 110, 16 OBR 117, 474 N.E. 2d 681; *Graziano* v. *Davis* (1976), 50 Ohio App. 2d 83, 4 O.O. 3d 55, 361 N.E. 2d 525; *In re Griffiths* (1975), 47 Ohio App. 2d 238, 1 O.O. 3d 307, 353 N.E. 2d 884. "The factors set forth in R.C. 3109.04(C) with respect to determining the child's best interest in custody cases apply equally to visitation cases. The trial court must weigh these and other relevant factors in determining the child's best interest in visitation cases." *In re Whitaker, supra,* at paragraph two of the syllabus. These factors are:

"(1) The wishes of the child's parents regarding his custody;

"(2) The wishes of the child regarding his custody if he is eleven years of age or older;

"(3) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;

"(4) The child's adjustment to his home, school, and community;

"(5) The mental and physical health of all persons involved in the situation." R.C. 3109.04(C).

Since the trial court has discretion in determining whether to grant visitation under R.C. 3109.05(B), an abuse of that discretion must be shown in order for an appellate court to reverse the trial court; that is, the trial court's decision must have been unreasonable, arbitrary or unconscionable. See *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 219, 5 OBR 481, 482, 450 N.E. 2d 1140, 1142; *Koegel* v. *Koegel* (1982), 69 Ohio St. 2d 355, 357, 23 O.O. 3d 320, 323, 432 N.E. 2d 206, 208; *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348, 355, 20 O.O. 3d 318, 322, 421 N.E. 2d 1293, 1299; *Conner* v. *Conner* (1959), 170 Ohio St. 85, 9 O.O. 2d 480, 162 N.E. 2d 852; *Dennison* v. *Dennison* (1956), 165 Ohio St. 146, 59 O.O. 210, 134 N.E. 2d 574.

Regarding the factors of determining the child's best interests, the record shows that appellee-mother did not want her daughter visiting appellant under court order. Appellee was concerned that, in all likelihood, appellant would have close contact with her son, Lee Drennen, which would precipitate contact between Lee Drennen and Melissa.

Lee Drennen, appellee's ex-husband and the father of Melissa, was convicted and imprisoned for an attempted rape of appellee. The incident occurred in February 1982, after the August 1981 divorce, in front of the then three-year-old child and in the child's bed. The child still has nightmares, is having problems in school, and is undergoing psycho-

logical treatment due to the incident.[1] The trial court properly considered the factor of the father's imprisonment and the surrounding circumstances in determining the child's best interests. See *In re Whitaker, supra,* at 219, 522 N.E. 2d at 569, fn. 7.[2]

Other incidents of Lee Drennen's violence were described in the record, including that of his blowing up appellant's house with explosives or fire and other violence directed against appellee.

Prior to the rape incident, Lee Drennen had been harassing appellee; he threatened to commit suicide and take Melissa with him. Due to these threats, appellee conditioned the child's visitation with appellant on appellant's agreeing not to take Melissa to see Lee. Contrary to her agreement, appellant took the child to, and left the child for several hours with, her father.

Appellee was also concerned that appellant has no control over any child, including Melissa, and is unable to discipline children, citing specific instances between appellant and Melissa.

Further, regarding the third factor of the child's interaction and interrelationship with the people who may significantly affect the child's best interests, the evidence shows that despite offers by the mother for appellant to contact her for visitation, the child has visited with appellant only one time since February 1982. That contact was initiated by the mother.

It was held in *In re Whitaker, supra,* at paragraph three of the syllabus, that:

"An *in camera* interview of a child may be an appropriate method by which the trial court determines the child's best interest in visitation cases, even if one of the parties objects to such an interview."

Since Melissa was not eleven years old when the evidentiary hearing was held, the trial court could have ascertained, but was not required to ascertain, the child's wishes concerning visitation pursuant to R.C. 3109.04 (C)(2). *Id.* at 219, 522 N.E. 2d at 569. Neither party requested an *in camera* interview of the child. Therefore, we find no abuse of discretion in the court's not proceeding in this manner and considering this factor.

An adequate hearing was held and no abuse of discretion has been revealed in the trial court's determination that visitation with appellant would not be in the child's best interests.

Accordingly, appellant's first and second assignments of error are found not well-taken.

*Judgment affirmed.*

CONNORS, HANDWORK and GLASSER, JJ., concur.

---

[1] This is evidence of the best interests factors four and five. The trial court had discretion in deciding whether to order a requested psychological evaluation of Melissa. In light of the extensive evidence already before it, we find no abuse of that discretion in not ordering such psychological evaluation.

[2] According to *In re Whitaker* (1988), 36 Ohio St. 3d 213, 219, 522 N.E. 2d 563, 569, fn. 7, the court could condition visitation with a requirement that the child's father not be present in the grandparent's home on visitation days. However, it is not mandatory that a court do so, and in light of appellant's history of apparent lack of control over her son including his violence directed against her, it may not be in the child's best interests to do so.