**BENTE, Appellant and Cross–Appellee,**

v.

**HILL et al., Appellees and Cross–Appellants.**

[Cite as *Bente v. Hill* (1991), 73 Ohio App.3d 151.]

Court of Appeals of Ohio,
Clermont County.

Nos. CA90–09–080, CA90–09–088.

Decided April 15, 1991.

*Kenneth J. Koenig,* for appellant and cross-appellee.

*Kennedy & Zugelter* and *Michael A. Kennedy,* for appellees and cross-appellants.

WALSH, Judge.

Plaintiff/appellant/cross-appellee, Barbara Bente, f.k.a. Barbara Hill ("Bente"), appeals a decision by the Clermont County Court of Common Pleas, Domestic Relations Division, which in July 1990 ordered visitation between Bente's then six-year-old daughter, Lindsey Bente, and the child's natural paternal grandparents, third-party plaintiffs/appellees/cross-appellants, Marilyn and Lawrence Hill ("the Hills").

Lindsey is the issue of the marriage of Bente and the Hill's son, Russell Hill. In 1984, Bente and Russell Hill were divorced in the Clermont County Court of Common Pleas, Domestic Relations Division. In 1986, Bente married David Bente, who adopted Lindsey without objection by Russell Hill in March 1989 in the Hamilton County Court of Common Pleas, Probate Division.

In August 1989, the Hills initiated the instant action in the Clermont County Court of Common Pleas, Domestic Relations Division, seeking a visitation order. At the referee hearing, both the Hills and the Bentes presented evidence on the question of whether it was in Lindsey's best interest to maintain a relationship with the Hills. Marilyn Hill testified that Lindsey had been a frequent visitor at their farm, and that the Hills and Lindsey both looked forward to those visits. Testimony by both the Hills and Bente demonstrated that a loving relationship had developed between the Hills and Lindsey, with phone calls, Christmas and birthday gifts, and various shared activities as evidence of the bond.

Testimony by Barbara Bente and her husband David indicated that, although they had at first encouraged a relationship between Lindsey and the Hills, the Bentes ultimately denied the Hills further contact with the child after Lindsey told Barbara Bente in August 1987 that she had met someone named "Rusty" while visiting the farm. Knowing "Rusty" to be the nick-

name of her former husband, Russell Hill, Bente become concerned that the Hills had violated her directive that the child not be permitted to see Russell Hill. Apparently, Bente knew Russell Hill to engage in habitual drunkenness, drug abuse, and physical abuse of others, behavior which had contributed to the breakup of her marriage to him. Bente was thus anxious to avoid contact between Russell Hill and Lindsey.

The Hills denied that Lindsey had seen Russell Hill more than once and explained his presence on that day as inadvertent. According to Marilyn Hill, once the Hills realized Russell and Lindsey would be simultaneously present, they decided to downplay the significance of his arrival and merely identified him to the child as "Rusty."

The Bentes were nevertheless alarmed. Ultimately, David Bente phoned the Hills, told them he had adopted Lindsey with Russell's permission, and informed them they would not be seeing Lindsey again. This visitation motion followed.

At the conclusion of the hearing, the referee determined that the best interest of the child would be served by granting visitation rights to the Hills. The referee considered factors outlined in R.C. 3109.04 in making such determination.[1]

The trial court agreed, and, in July 1990, adopted the recommendation by the referee that the Hills be granted visitation rights. However, the trial

---

1. R.C. 3109.04(C) provides the following criteria to be considered by the trial court when making a custody determination:

"In determining the best interest of a child pursuant to this section, whether on an original award of custody or modification of custody, the court shall consider all relevant factors, including:

"(1) The wishes of the child's parents regarding his custody;

"(2) The wishes of the child regarding his custody if he is eleven years of age or older;

"(3) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;

"(4) The child's adjustment to his home, school, and community;

"(5) The mental and physical health of all persons involved in the situation."

Although R.C. 3109.04 refers to custody matters, courts have in the past relied upon factors listed in R.C. 3109.04(C) in determining the best interest of the child for visitation purposes. *Drennen v. Drennen* (1988), 52 Ohio App.3d 121, 122, 557 N.E.2d 149, 150–151.

R.C. 3109.051, recently enacted, sets out fifteen specific criteria for determining the best interest of the child for purposes of visitation. That statute expands upon the factors in R.C. 3109.04, focusing upon the nature and intensity of the relationships forged between the child and significant people in the child's life, the willingness of the parties to cooperate in facilitating visitation, the mental and physical health of the child, various time and geographic location concerns, and, finally, "any other factor in the best interest of the child." Although the instant trial court was not required to follow R.C. 3109.051 since the action below commenced prior to its enactment, a review of the referee's report and recommendation indicates such factors were nevertheless considered in determining Lindsey's best interest.

court modified the recommendation to allow two Sunday afternoons per month, rather than the one weekend per month the referee had recommended.

Bente appealed from the order of the court below, and assigned the following as error:

Assignment of Error No. 1:

"The trial court erred to the prejudice of plaintiff-appellant in purporting to exercise jurisdiction to determine the application of former paternal grandparents for visitation, where, prior to the application for visitation, another court in another county had granted a petition for adoption of the minor child, thereby removing the child from the jurisdiction of the trial court."

Assignment of Error No. 2:

"The trial court erred to the prejudice of plaintiff-appellant by ordering visitation under R.C. 3109.05 without a sufficient evidentiary basis for determining that such visitation is in the child's best interest."

In their cross-appeal, the Hills assigned one error as follows:

"The trial court erred in its entry ordering visitation by modifying the report of the referee."

I

Initially, we note that Ohio is one of a number of states which lacks statutes specifically dealing with the issue of grandparent visitation subsequent to stepparent adoption. See Grandparent Visitation Disputes: A Legal Resource Manual (Karp Ed. 1989) 27–32. Absent such statutory directive, case law has tended toward allowing grandparent visitation where the child has been adopted by a stepparent. We find particularly persuasive the reasoning in *Lingwall v. Hoener* (1985), 108 Ill.2d 206, 91 Ill.Dec. 166, 483 N.E.2d 512, which concludes that the interest in severing contact between child and grandparent where the child is adopted by strangers is not apparent in a case where the child is adopted by a stepparent:

" * * * The Marriage Act and the Adoption Act share the common goal of proceeding in the child's best interest and welfare, and the statutes should be read together to give effect to their common goal. Thus, when an adoption by a natural parent and a new spouse has occurred, the court must examine all relevant factors to determine whether grandparental visitation is in the child's best interest. However, * * * different issues are involved in determining the best interest of the child in an adoption by strangers and in an adoption by a natural parent and a new spouse. In adoptions involving strangers, the primary policy concern has traditionally been with maximizing the pool of potential adoptive parents by guaranteeing, through the termination of the

rights and responsibilities of the natural parents, that the adoptive parents will have 'the opportunity to create a stable family relationship free from unnecessary intrusion.' *In re Roger B.* (1981), 84 Ill.2d 323, 331, 49 Ill.Dec. 731, 418 N.E.2d 751.

"In adoptions by a natural parent and that parent's new spouse, the policy concern with maximizing the pool of adoptive parents is greatly diminished, since the act of becoming a stepparent most often occurs without regard to adoption and in spite of regular visitations between the child and the noncustodial natural parent. If an adoption then ensues, the rights and obligations of the natural parent are terminated to the same degree as in an adoption by strangers. *Termination of the parental relationship is, however, a legal fiction, since no act of law can nullify a biological relationship. There is no reason to extend that legal fiction to include a termination of a grandparental relationship unless it is in the child's best interest to do so. * * *"* (Emphasis added.) *Id.*, 108 Ill.2d at 213–214, 91 Ill.Dec. at 170, 483 N.E.2d at 516.

As a result of the lack of clear statutory directive, Ohio courts have tended to assume the authority to grant visitation rights so long as doing so is in the best interest of the child. See, *e.g.*, *Graziano v. Davis* (1976), 50 Ohio App.2d 83, 90, 4 O.O.3d 55, 60, 361 N.E.2d 525, 530; *Welsh v. Laffey* (1984), 16 Ohio App.3d 110, 111, 16 OBR 117, 118, 474 N.E.2d 681, 683; *In re Thornton* (1985), 24 Ohio App.3d 152, 154, 24 OBR 241, 243, 493 N.E.2d 977, 978; *In re Pennington* (1988), 55 Ohio App.3d 99, 101, 562 N.E.2d 905, 907.

■ Going to the heart of the question of the trial court's postadoption authority to grant grandparents visitation rights, Bente first argues that the Clermont County Domestic Relations Court lacked jurisdiction over the matter. She asserts that because the adoption succeeded the divorce, the proper venue for the visitation action should have been Hamilton County. Her basis for this assertion essentially rests upon the theory that the specificity of the adoption statute, R.C. Chapter 3107, makes it paramount to the general statute regarding visitation, R.C. 3109.05.

R.C. 3109.05(B), at all times significant to this action provided, in part:

" * * * In the discretion of the court, reasonable companionship or visitation rights may be granted to any other person having an interest in the welfare of the child. The juvenile court shall have exclusive jurisdiction to enter the orders in any case certified to it from another court."

R.C. 3107.15 provides, in part:

"(A) A final decree of adoption and an interlocutory order of adoption that has become final, issued by a court of this state, shall have the following effects as to all matters within the jurisdiction or before a court of this state:

"(1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and his relatives, including his biological or other legal parents, so that the adopted person thereafter is a stranger to his former relatives for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the person by name or by some designation not based on a parent and child or blood relationship."

Bente asserts that because the adoption provision specifically directs that the adopted person is, after the adoption, "a stranger to his former relatives for all purposes including * * * the interpretation or construction of * * * statutes," R.C. 3109.05, allowing visitation rights, is superseded.

We find that this argument lacks merit. R.C. 3109.05 deals with issues arising out of divorce, while R.C. 3107.15 addresses issues relevant to adoption. As the Hills point out, application of R.C. 1.51, which contains the statutory construction proviso that specific trumps general, is improper here since the motion before the trial court was relevant to the divorce, and not specifically relevant to the adoption.

Bente also asserts that the adoption divested the domestic relations court of any authority to grant visitation rights. In *Welsh v. Laffey, supra,* this court addressed the issue of whether adoption by a stepfather vitiated the power of the domestic relations court to grant visitation rights to the paternal grandmother. We concluded that "the mere fact that a probate division has granted adoption should not preclude [a] domestic relations division from granting visitation." *Id.,* 16 Ohio App.3d at 113, 16 OBR at 120, 474 N.E.2d at 685. We think that this conclusion is no less true where the divorce is granted in one county while the adoption is granted in another.

There is clearly precedent for the concept that the domestic relations court retains jurisdiction over support issues arising out of the divorce, despite a subsequent adoption of the child. See *Bercaw v. Bercaw* (1989), 45 Ohio St.3d 160, 162, 543 N.E.2d 1197, 1199. Thus, we hold that the domestic relations court which granted the divorce decree retains jurisdiction for the purposes of granting visitation rights as required by the best interest of any children born as issue of the marriage regardless of the existence or venue of a subsequent stepparent adoption proceeding. There is no reason to believe that because a

stepparent has been substituted, by adoption proceedings, for the natural parent, that such occurrence would divest the domestic relations court of jurisdiction which it originally had over the remaining biological parent and the child.

Based upon these considerations, we overrule Bente's first assignment of error.

■ Bente's second assignment asserts that the trial court erred in adopting the recommendation of the referee, which, she urges, was not supported by sufficient evidence. Primarily, Bente argues that the trial court should have admitted an affidavit prepared by a psychologist who apparently examined Lindsey and concluded that visitation with the Hills would not be in the child's best interest.

The trial court did not err in this determination. First, the affidavit had been prepared the day before the referee hearing. Thus, Bente knew of the existence of this evidence and could have requested a continuance in order to either attempt to submit the affidavit or present live testimony by the affiant. She did not do so, instead presenting the affidavit to the trial court as part of her objections to the report and recommendation of the referee.

Secondly, the affidavit was hearsay, that is, a statement other than one made by the declarant while testifying at the hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801. Clearly, the affidavit was an out-of-court statement offered for the purpose of proving visitation with the Hills was not in Lindsey's best interest. Had the trial court admitted the document, the Hills would have had no opportunity to cross-examine the affiant, or to prepare a counter-affidavit of their own. Thus, the trial court did not err in declaring the affidavit inadmissible.

While Civ.R. 53 allows any party to file written objections to the referee's report, the trial court had discretionary authority to hear additional evidence or to return the matter to the referee for further hearing. Considering that the psychologist's affidavit was hearsay, admission of which may have prejudiced the Hills, we cannot say the trial court abused its discretion in rejecting the affidavit.

■ Bente additionally argues the referee erred in excluding David Bente from the courtroom during the hearing. Although we can appreciate Bente's assertion that, as adoptive father, David Bente had an interest in the matter, technically he was not a party to the motion for visitation. Even if David Bente could be considered a party, Bente fails to show how his absence prejudiced her position in this matter. See Civ.R. 61. David Bente did testify, giving his opinion on the question of Lindsey's best interest. As a close family member, his views and wishes regarding the child were clearly relevant to the determination of the issues below. However, because the record

indicates the court did consider David Bente's point of view, and because there appears to be no prejudice arising out of his absence from the courtroom, we find no reversible error on this point.

We thus overrule Bente's second assignment of error.

## II

The Hills argue in their cross-appeal that the trial court erred in modifying the referee's visitation recommendation from one weekend a month to two Sunday afternoons per month. This question was subject to an abuse of discretion standard, and we may not reverse unless we detect a trial court attitude which was arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1141. The trial court was not required to conduct further evidentiary review before making this minor change, as altering the referee's recommendation was within the court's authority to grant "reasonable" visitation rights, R.C. 3109.05(B), and to modify the referee's recommendation under Civ.R. 53(E)(5) ("the court *may* adopt the referee's recommendations" [emphasis added]). Here, evidence indicated that Lindsey had not seen the Hills for some two years, so that a shorter visitation period would at first be warranted. Finding no abuse of discretion, we overrule the Hills' assignment of error.

*Judgment affirmed.*

KOEHLER, P.J., and CASTLE, J., concur.

LYLE W. CASTLE, J., retired, of the Twelfth Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.