## FOOR

v.

**FOOR, n.k.a. Tobias, Appellee; Foor et al., Appellants.**

[Cite as *Foor v. Foor* (1999), 133 Ohio App.3d 250.]

Court of Appeals of Ohio,
Twelfth District, Preble County.

No. CA98–06–007.

Decided April 26, 1999.

*John L. Petry,* for appellee.

*H. Steven Hobbs,* for appellants.

WILLIAM W. YOUNG, Judge.

Third-party defendants, John and Sandra Foor ("the grandparents"), appeal a decision of the Preble County Court of Common Pleas denying their petition for

visitation with their grandchildren. Upon review of the relevant case law and the record before this court, we reluctantly affirm the trial court's judgment.

On March 28, 1986, Donald and Tuesday Foor were married. Four children were born of the marriage. On December 18, 1992, a complaint of divorce was filed with the Preble County Court of Common Pleas, Domestic Relations Division. The final divorce decree was filed on January 10, 1994. The parties agreed to a shared parenting plan ("SPP"). Pursuant to the SPP, Tuesday was designated the residential parent and Donald was granted visitation three week-ends per month, plus one night each week. Evidence was presented that during his visitation periods, Donald would allow the grandparents to visit with the children.

Sometime in 1994, following her divorce, Tuesday married her current husband, Albert Lee Tobias. Approximately two years later, on June 28, 1996, Donald died of a gunshot wound to the head. Following this event, Tobias filed a petition with the Preble County Court of Common Pleas, Probate Division, to legally adopt Tuesday's children as his own. In February 1997, Tobias's petition of adoption was granted.

On February 28, 1998, the grandparents filed a motion for grandparent visitation in Donald and Tuesday's divorce action. Concerned that Tobias's adoption of the children terminated any visitation rights that the grandparents may have had with the children, the trial court asked the parties to brief the issue for the court. In the event that it was determined that the grandparents were indeed entitled to visitation with the children, on May 20, 1998, the trial court took testimony addressing whether grandparent visitation would be in the best interest of the Foor children. However, after considering Ohio's case law, the trial court determined "that it ha[d] no authority to grant grandparent visitation."

The grandparents timely appealed, contending that the trial court erred in finding that it lacked the authority to grant grandparent visitation after the minor children were adopted by a stepparent.

We begin our analysis with an examination of three relevant Revised Code sections. The first is R.C. 3107.15, concerning the effect of adoption. The relevant portions of R.C. 3107.15 are:

"(A) A final decree of adoption * * * shall have the following effects as to all matters within the jurisdiction or before a court of this state:

"(1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and his relatives * * *;

"* * *

"(B) Notwithstanding division (A) of this section, if a parent of a child dies without the relationship of parent and child having been previously terminated and a spouse of the living parent thereafter adopts the child, the child's rights from or through the deceased parent for all purposes, including inheritance * * * are not restricted or curtailed by the adoption."

Thus, pursuant to division (A), the effect of an adoption is to create the legal fiction that the child is no longer, in any way, related to the parent who has relinquished parental rights, and has in effect become the biological child of the adoptive parent. When the parent of a child dies, as in the case now before this court, without the parent-child relationship having been terminated, division (B) controls to allow the child to still inherit from the deceased parent or that parent's relatives in spite of any subsequent adoption. Ohio courts have read this provision as preserving the *child's rights,* rather than preserving any rights that any relatives of the deceased parent might have with respect to the child. *Beard v. Pannell* (1996), 110 Ohio App.3d 572, 674 N.E.2d 1225.

The second Revised Code section we need to examine is R.C. 3109.11, companionship or visitation rights of grandparents where parent is deceased. The relevant portions of R.C. 3109.11 are:

"If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child. * * *

"The remarriage of the surviving parent of the child does not affect the authority of the court under this section to grant reasonable companionship or visitation rights with respect to the child to a parent or other relative of the child's deceased father or mother."

Thus, pursuant to the foregoing, before a court may grant a relative of a deceased parent visitation with a child, two things must occur: (1) the party seeking visitation must file a motion seeking such visitation, and (2) the court must determine that such visitation is in the child's best interest. While R.C. 3109.11 expressly provides that a surviving parent's *remarriage* does not affect a relative of a deceased parent's right to visitation, we note that the statute is silent as to how a stepparent *adoption* affects the relative of a deceased parent's visitation rights.

Finally, the third Revised Code section we must examine is R.C. 3109.051, companionship or visitation rights. The relevant portions of R.C. 3109.051 are:

"(B)(1) In a divorce, dissolution of marriage, legal separation, annulment, or child support proceeding that involves a child, the court may grant reasonable companionship or visitation rights to any grandparent, any person related to the child by consanguinity or affinity, or any other person other than a parent, if all of the following apply:

"(a) The grandparent, relative, or other person files a motion with the court seeking companionship or visitation rights.

"(b) The court determines that the grandparent, relative, or other person has an interest in the welfare of the child.

"(c) The court determines that the granting of the companionship or visitation is in the best interest of the child.

"(2) A motion may be filed under division (B)(1) of this section during the pendency of the divorce, dissolution of marriage, legal separation, annulment or child support proceedings or, if a motion was not filed at that time or was filed at that time and the circumstances have changed, at any time after the degree or final order is issued in the case."

From an examination of R.C. 3109.051, it is clear that in the *divorce, dissolution of marriage, and legal separation context*, grandparents may file for reasonable companionship and visitation rights. Again, however, like R.C. 3109.11, the statute is silent about grandparents' rights to visitation following an adoption.

Accordingly, we find that Ohio's statutory framework does provide mechanisms for granting grandparent companionship or visitation rights given certain circumstances. Specifically, a grandparent may be granted visitation following the occurrence of a disruptive precipitating event, such as the death of a parent, or a divorce. However, our examination of Ohio's statutory framework reveals that nothing specifically addresses grandparents' rights to reasonable companionship or visitation following an adoption. However, Ohio case law has, in fact, addressed this issue.

In 1984, this court squarely addressed the question of grandparents' visitation rights following a stepparent adoption. In *Welsh v. Laffey* (1984), 16 Ohio App.3d 110, 16 OBR 117, 474 N.E.2d 681, the biological parents dissolved their marriage. Following that action, the paternal grandmother filed a motion in the divorce action, pending in domestic relations court, seeking visitation with her grandchild. Meanwhile, the mother had remarried and her new husband had filed a petition in probate court to adopt her child. The petition was subsequently granted. The domestic court eventually determined that the child's best interest would be

served by regular visitation with her paternal grandmother. However, the mother appealed claiming that under Ohio's adoption statute, R.C. 3107.15, the child's adoption by her stepfather severed any visitation rights that her paternal grandmother may have had. Relying on *Graziano v. Davis* (1976), 50 Ohio App.2d 83, 4 O.O.3d 55, 361 N.E.2d 525, this court disagreed. We determined that the answer to this dilemma required an examination of what lay within the best interest of the child. We were unwilling to proclaim a judicial fiat that an adoption would forever preclude grandparent visitation because such a rule might be too strict and too arbitrary, and might work against the best interest of the child in certain instances.

In 1991, this court again addressed grandparents' rights following an adoption. In *Bente v. Hill* (1991), 73 Ohio App.3d 151, 596 N.E.2d 1042, the biological parents were divorced, the mother remarried, and her new husband adopted her daughter without objection. The paternal grandparents then filed a motion seeking visitation with the child. Following a hearing on best interest, the trial court determined that the child's best interest would be served by visitation with her paternal grandparents. However, the natural mother appealed, contending that the adoption divested the court of any authority to grant visitation rights. We disagreed and followed *Welsh,* stating that a domestic relations court retains jurisdiction to determine visitation issues under a consideration of what lies within the best interest of the child, in spite of an adoption. Thus, we find that *Welsh* and *Bente* would be controlling authority over this matter, unless we find that they are in conflict with a decision from the Ohio Supreme Court.

Turning our attention to Ohio Supreme Court precedent, we note that in 1991 the court decided a similar issue in *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 574 N.E.2d 1055. In *Ridenour,* the court was faced with a "stranger" adoption, rather than a stepparent adoption. The grandparents contended that R.C. 3109.051 and previous case law together established that grandparents' rights to visitation properly lies within the domestic relations court's jurisdiction, and further contended that it was within a court's exercise of discretion to determine what is in the best interest of the child. However, upon examination of Ohio's adoption statute, R.C. 3107.15, the court concluded that "[o]n its face, this statute suggests that the children's relationship with their biological grandparents must be terminated once they are adopted." *Id.,* 61 Ohio St.3d at 325, 574 N.E.2d at 1061. The court further noted that while Ohio's statutory framework allowed grandparent visitation under certain circumstances, namely divorce and parental death, "[t]he statutes contain no reference to adoption." *Id.,* 61 Ohio St.3d at 326, 574 N.E.2d at 1062.

Then in 1994, the Ohio Supreme Court was asked to decide *In re Martin* (1994), 68 Ohio St.3d 250, 626 N.E.2d 82, which addressed paternal grandparent

visitation following an adoption of the child by the maternal grandparents, or by "nonstrangers." The court disposed of the matter by determining that because the biological father had failed to establish paternity before his death, the paternal grandparents were not qualified to seek visitation rights. However, because paternity had never been seriously questioned, the court then proceeded to address the contentions of the parties. Specifically, the paternal grandparents had asked the Supreme Court to distinguish between adoptions by strangers and adoptions by nonstrangers and to limit the reach of *Ridenour*. The Supreme Court declined to do so by stating:

"Given the fact that this court has consistently held that grandparent visitation rights are purely statutory in nature, we believe that any changes in this area of law must emanate from the General Assembly. *While we are mindful of the compelling policy reasons favoring grandparent visitation rights after adoptions by relatives, R.C. 3107.15 simply does not distinguish between adoptions by strangers and nonstrangers."* (Emphasis added and citations omitted.) *Id.,* 68 Ohio St.3d at 254, 626 N.E.2d at 85.

Thus, the foregoing case law suggests that this court's decisions in both *Welsh* and *Bente* have been impliedly overruled by the Supreme Court's decisions of *Ridenour* and *Martin* and are no longer controlling authority in this district.

In deciding this matter, we note that the trial court relied on a Sixth District Court of Appeals case, *Beard v. Pannell* (1996), 110 Ohio App.3d 572, 674 N.E.2d 1225, which was decided after both *Ridenour* and *Martin.* The *Beard* court stated:

"[W]hile [R.C. 3109.11] preserves the right of grandparent visitation when the surviving spouse remarries, it does not provide for the preservation of visitation rights after an adoption by a stepparent. * * *

"While this court is sympathetic to appellants' situation, the statutes do not support their arguments. As the Ohio Supreme Court stated in *In re Martin,* 68 Ohio St.3d at 254, 626 N.E.2d at 84–85, and other cases, grandparent visitation rights are statutorily provided. Thus, any changes in this legal area must be initiated by the General Assembly." *Id.* at 575, 674 N.E.2d at 1227.

In light of the Supreme Court precedent, we cannot improve upon the reasoning of the *Beard* court. When the Supreme Court has been presented the opportunity to rule on this issue in the past, it has consistently declined to do so, stating unequivocally that any changes in this area of law must emanate from the General Assembly. Reluctantly, we find that we are in no position to disagree.[1]

---

1. We note at this point that as of April 12, 1999, the Legislative Drafting Subcommittee of the Ohio State Bar Association Family Law Committee has accepted the Supreme Court's

Accordingly, the trial court did not err when it determined that it did not have the authority to grant grandparent visitation. Appellants' assignment of error is overruled.

*Judgment affirmed.*

POWELL, P.J., concurs.

KOEHLER, J., dissents.

KOEHLER, Judge, dissenting.

I respectfully disagree with the panel on this matter. The Ohio Supreme Court's decisions in *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 574 N.E.2d 1055, and *In re Martin* (1994), 68 Ohio St.3d 250, 626 N.E.2d 82, do not expressly overrule this court's decisions in *Welsh v. Laffey* (1984), 16 Ohio App.3d 110, 16 OBR 117, 474 N.E.2d 681, and *Bente v. Hill* (1991), 73 Ohio App.3d 151, 596 N.E.2d 1042. Accordingly, the trial court did have authority to properly consider whether grandparent visitation was in the best interest of the Foor children. Consequently, I would reverse and remand this matter to the trial court with an instruction that the trial court is to make a finding addressing whether or not visitation with the grandparents is in the best interest of the Foor children.

---

invitation for legislative changes in the area of grandparent visitation following a stepparent adoption. Specifically, the committee has drafted and proposed legislation that would prevent the curtailment or restriction of grandparent visitation following a stepparent adoption. The proposed legislation would require grandparents seeking such visitation to file a motion with the trial court and further require the trial court to consider whether such visitation would be in the best interest of the child. See Ohio State Bar Report, Vol. 72, No. 15, April 12, 1999, pp. 365–370. However, while we find comfort in this proposed legislation, because it is not currently statutory authority, it cannot be considered controlling authority in the matter now before this court.