IN RE THORNTON.

(No. 84AP-536—Decided May 21, 1985.)

*Michael L. Close,* for appellant.
*William S. Friedman Co., L.P.A., William S. Friedman* and *John E. Patterson,* for appellees.

CONNORS, J. This cause comes on appeal from a determination by the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting visitation rights to the maternal grandparents of a child adopted by his stepmother subsequent to his natural mother's death.

Appellant, David Thornton, was married to the daughter of appellees, Robert and Lorelei Phillips. During that marriage, Joseph James Thornton was born. In 1977, appellant's wife, the natural mother of Joseph James Thornton, died. At the time, Joseph was two years of age. For two years subsequent to their daughter's death, appellees maintained frequent contact with appellant and their grandchild.

The relationship changed in 1979

when appellant became involved with his future wife. Appellant prohibited appellees' contact with their grandchild at some time in 1980. Appellees filed this action for court-ordered visitation on January 23, 1981. Joseph was adopted by his stepmother soon thereafter. From the ultimate granting of visitation rights, appellant sets forth five assignments of error:

"1. The trial court erred in holding that Ohio Revised Code Section 3109.11 applies subsequent to the adoption of a child by [a] stepparent.

"2. The trial court erred in modifying the referee's report to allow visitation with the adopted child by the maternal grandparents without first ordering that a determination be made as to whether such visitation was in the best interest of the adopted child.

"3. The trial court erred in granting visitation to the maternal grandparents where they did not meet the burden of showing that such was in the best interest of the child.

"4. The trial court erred by allowing the guardian ad litem to usurp the court's authority to make the determination as to whether or not visitation was in the best interest of the child.

"5. The trial court erred in not allowing respondent [appellant] to introduce evidence of the relationships between the maternal grandparents, the natural father, the stepmother, or the adoptive mother, and the minor child occurring prior to January 1, 1983."

On February 5, 1981, appellant filed a motion to dismiss appellees' request for court-ordered visitation. By an agreed judgment entry, the parties herein consented to appointment of Her-

man A. Tolbert, M.D., as guardian *ad litem* and cooperated with visitation throughout 1982. A motion to establish a set visitation schedule was filed on behalf of appellees on January 6, 1983.

After a hearing on July 7, 1983, a referee dismissed the action on the premise that appellees' rights to visit pursuant to R.C. 3109.11 were divested by the stepmother's adoption of Joseph. See R.C. 3107.15. After a hearing on appellees' objections to the referee's decision, the trial court sustained the objections and remanded the case for further action, resulting in a second hearing.

Appellant's first assignment of error contends that the trial court erred in holding that R.C. 3109.11 applies subsequent to the adoption of a child by his stepparent. Appellant claims that the operation of R.C. 3107.15 serves to terminate all relationships between an adopted child and prior relatives.[1] However, appellant applies far too broad an interpretration to R.C. 3107.15 in light of the express language of R.C. 3109.11, which states:

"If either the father or mother of an unmarried minor child is deceased, the relatives of such deceased person may be granted reasonable companionship or visitation rights to the minor child during its minority by a court of competent jurisdiction upon a finding that such companionship or visitation rights would be in the best interest of the minor child."

Most recently, the Butler County Court of Appeals held in the syllabus of *Welsh* v. *Laffey* (1984), 16 Ohio App. 3d 110, the following:

"An adoption of a child by a stepparent does not terminate the power of

---

[1] R.C. 3107.15(B) states:

"Notwithstanding division (A) of this section, if a parent of a child dies without the relationship of parent and child having been previously terminated and a spouse of the living parent thereafter adopts the child, the child's rights from or through the deceased parent for all purposes, including inheritance and applicability or construction of documents, statutes, and instruments, are not restricted or curtailed by the adoption."

the court to determine visitation rights of grandparents under R.C. 3109.05, where, but for the adoption, the court finds such visitation to be in the best interests of the child." See, also, *In re Griffiths* (1975), 47 Ohio App. 2d 238 [1 O.O.3d 307]; *Graziano* v. *Davis* (1976), 50 Ohio App. 2d 83 [4 O.O.3d 55].

The *Welsh* decision correctly identifies the jurisdiction of the court to order reasonable visitation pursuant to R.C. 3109.05(B), which reads in pertinent part:

"* * * In the discretion of the court, reasonable companionship or visitation rights may be granted to any other person having an interest in the welfare of the child. The juvenile court shall have exclusive jurisdiction to enter the orders in any case certified to it from another court."

Empowering courts to grant visitation in situations such as the instant case is in line with the majority of jurisdictions that have shed the rigorous prohibitions of archaic common law. See, generally, Bartlett, Rethinking Parenthood as an Exclusive Status: The Need for Legal Alternatives when the Premise of the Nuclear Family has Failed (1984), 70 Va. L. Rev. 879. Thus, the trial court's finding that visitation may be awarded appellees in this instance is not error. Accordingly, appellant's first assignment of error is·not well-taken.

By the express language of R.C. 3109.11, visitation may only be granted when in the best interests of the child. The third and fourth paragraphs of the syllabus of *In re Griffiths, supra,* provide as follows:

"3. The companionship and visitation rights vested by R.C. 3109.11 are neither absolute nor unqualified but are conditioned upon the finding by a court of competent jurisdiction that such rights are in the best interests of the child.

"4. The companionship and visita-

tion rights of relatives granted in R.C. 3109.11 are subservient to the best interests of the minor child."

Appellant's second and fifth assignments of error will be considered together. Appellant's second assignment of error challenges the trial court's modification remand of the referee's decision without a finding that visitation is in the best interests of the child. Appellant's fifth assignment of error contends that the referee erred in limiting the admission of evidence to events which occurred subsequent to January 1, 1983.

The trial court found improper the referee's prior recommendation that appellees' motion for visitation be dismissed. Thus, the trial court acted properly in accordance with R.C. 3109.11. However, the trial court did not enter a finding concerning whether the requested visitation was in the best interests of Joseph; rather, the trial court merely held that visitation was available and remanded the cause for further action.

It is apparent that such visitation is proper only when a finding is made pursuant to the second paragraph of the syllabus in *Graziano, supra:*

"The companionship and visitation rights vested by R.C. 3109.11 are neither absolute nor unqualified but are conditioned upon the finding by the proper court that such rights are in the best interest of the child."

Clearly, on remand, the referee was charged with the exposition of facts sufficient to make a finding whether visitation with the maternal grandparents was in the child's best interests. Yet the referee limited the evidence admitted at the second hearing, stating:

"Objection to the recommendation and report of the referee sustained. The Court will allow — will allow visitation of the minor child, Joseph James Thornton, by his maternal grandparents, Robert and Lorelei Phillips and will re-

mand this matter back to the referee for further action. This was September 7th, Nineteen Hundred and Eighty Three. So, I think that we should not go into any matters * * * certainly going back four years. Any pertinent matters going back for a year, we'll — we'll listen to.

"MR. PATTERSON: One year, Your Honor?

"THE COURT. One year, sir * * * Because, I — in my opinion, anything further back than that is really res judicata, sir."

Thus, the referee limited evidence to issues and events occurring after January 1983. We agree that substantial evidence both in testimony at hearing and by deposition had been adduced in this action.[2] However, the trial court's ruling and the referee's actions limited evidence on the crucial issue of whether the requested visitation is in the best interests of the child.

There is no question that a visitation order for maternal grandparents of a child adopted by a stepmother must be accompanied by an express determination that visitation is in the best interests of the child. *In re Griffiths, supra; Welsh, supra.* It is incumbent on a referee, in the determination of an issue of a child's best interests, that the hearing be conducted so as to fully adduce all evidence relevant and necessary to reach an appropriate judgment.

Appellees claim that the record contains sufficient evidence for a finding that visitation by the maternal grandparents is in Joseph's best interests. Appellees may well be correct, as the record contains substantial testimony both from the affected parties and medical personnel. Yet, conflicting testimony was barred by the referee's limitation of testimony. To affirm a judgment after such a one-sided hearing violates fundamental concepts of fairness and improperly vitiates the trial court's function as an impartial arbiter of the facts. A condition precedent to finding visitation to be in a child's best interests pursuant to RC. 3109.11 is a full and complete hearing on all evidence relevant to the visitation issue.

Thus, the failure of the trial court to fully adduce all relevant evidence on the visitation issue and thereby make a determination that visitation pursuant to R.C. 3109.11 is in the child's best interests is error. Accordingly, appellant's second and fifth assignments of error are well-taken.

Appellant's third and fourth assignments of error are rendered moot by this decision.

On consideration thereof, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is reversed, and the cause is remanded for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

STRAUSBAUGH and NORRIS, JJ., concur.

CONNORS, J., of the Sixth Appellate District, sitting by assignment in the Tenth Appellate District.

NORRIS, J., concurring. Although I concur with the result urged by the majority in disposing of the first assign-

---

[2] Appellant claims that the referee improperly interpreted the trial court's decision to *mandate* visitation. If the referee did so, appellant is correct as the trial court did not expressly determine that visitation was in Joseph's best interests. Thus, this inquiry could well end here and appellant's assignment of error is necessarily well-taken. However, we deem it advisable to continue this inquiry with regard to the limitation of evidence by the referee at the *second* hearing.

ment of error, I arrive at that result for the reasons stated below.

First, I do not believe that the case of *Graziano* v. *Davis* (1976), 50 Ohio App. 2d 83 [4 O.O.3d 55], was correctly decided under the statute defining the effect of adoption then in effect, R.C. 3107.13 (since repealed and replaced by R.C. 3107.15). The only exception that appeared in R.C. 3107.13 to the rule, that after adoption a child will be treated as being born to the adopting parent, was in the instance where one natural parent had died and the other parent had remarried and the stepparent became the adopting parent — in which case the exception provided that the child was still entitled to inherit through his deceased parent. In the face of the clear legislative intent that inheritance be the only exception to the general rule, the decision in *Graziano*, recognizing R.C. 3109.11 as an additional exception, amounted to a rewriting of R.C. 3107.13.

When, on January 1, 1977, R.C. 3107.13 was repealed and replaced by R.C. 3107.15, the new statute included this language:

"A. A final decree of adoption * * * shall have the following effects * * *:

"1. * * * [T]o terminate all legal relationships between the adopted person and his relatives * * * so that the adopted person thereafter is a stranger to his former relatives for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments * * * which do not expressly include the person by name or by some designation not based on a parent and child or blood relationship;

"* * *

"B. Notwithstanding division (A) of this section, if a parent of a child dies without the relationship of parent and child having been previously terminated and a spouse of the living parent thereafter adopts the child, the child's rights from or through the deceased parent for all purposes, including inheritance and applicability or construction of documents, statutes, and instruments, are not restricted or curtailed by the adoption."

By adopting a broader and more encompassing exception in the form of R.C. 3107.15(B) than had existed in former R.C. 3107.13, the General Assembly manifested its intention that, in the instance of a stepparent adoption, the "applicability * * * of * * * statutes," such as R.C. 3109.11, which are based upon "the child's rights from or through the deceased parent" would not be cut off by adoption. Accordingly, under present law, the result reached in this opinion, and in *Graziano,* is permissible.

Second, the provision of R.C. 3109.05(B), providing that "[i]n the discretion of the court, reasonable companionship or visitation rights may be granted to any other person having an interest in the welfare of the child," has no application to the circumstances of this case, since the marriage of the child's parents had not been terminated, nor had the cause been certified to the juvenile court by another court. Accordingly, *Welsh* v. *Laffey* (1984), 16 Ohio App. 3d 110, is of no assistance in the resolution of this appeal.