OPINION
{¶ 1} Appellant, Ralph Hinkle, appeals from the April 27, 2004 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, sustaining the motion of appellee, Franklin County Children Services ("FCCS") for permanent custody of appellant's minor children. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} The record reveals the following facts. Tude Hinkle ("Tude") was born on May 24, 2000, and Sunshine /aka/ Sunshyne Hinkle ("Sunshine") was born August 22, 2001, to appellant and Brenda Whitmer-Hinkle ("Ms. Hinkle"). On March 4, 2002, complaints were filed alleging Tude to be both a neglected and dependent child, and Sunshine to be a dependent child. A guardian ad litem was appointed to represent the children. After an adjudication of dependency on May 14, 2002, the children were made wards of the court and FCCS obtained temporary custody.
 {¶ 3} The court approved a case plan in attempt to reunify Tude and Sunshine with their parents. The case plan required appellant and Ms. Hinkle to address drug and alcohol abuse issues, domestic violence issues, maintain employment, meet the financial needs of the children, and to demonstrate their ability to provide for the children's basic needs and protection. (Tr. at 25.)
 {¶ 4} On January 30, 2003, FCCS filed a motion for permanent custody of the children. The hearing on the motion occurred on August 13, 2003. At the hearing, Ms. Hinkle, after consulting with counsel, chose not to contest the permanent custody motion. She testified that Tude and Sunshine had formed a bond with the foster family with which they were currently living, and that it would be in the best interest of her children for the permanent custody motion to be granted. (Tr. at 7.)
 {¶ 5} At the hearing, FCCS called appellant to testify as if on cross-examination. Appellant testified that he was incarcerated for a burglary offense from 1983 to 1984. In 1985, he was convicted of breaking and entering and aggravated burglary, and originally ordered to serve an indefinite sentence of 15-20 years. Appellant was released on parole in 1998. His parole was terminated on September 11, 2001, after he was arrested on a parole violation for committing a subsequent fifth degree felony. Appellant testified that he was scheduled for release from the institution in May 2004. At the time of the hearing, appellant was incarcerated at Pickaway Correctional Institution. (Tr. 10-12.)
 {¶ 6} Appellant averred that he had not seen his children since November 2001. While he was incarcerated, appellant asserted that he remained in contact with Tude and Sunshine. Following this testimony, counsel for appellant and the guardian ad litem declined the opportunity to question appellant. Thereafter, appellant asked, "Am I allowed to say something?" (Tr. at 15.) The trial judge allowed appellant to make a statement, in which he took responsibility for his mistakes with the children. Appellant spoke of his love for his children and his interaction with them prior to his incarceration. During his testimony, the trial judge interjected:
Well, the problem is — well, I don't doubt your affection for your children. I don't doubt that for a minute. But the kids lives have to go on in a regularly, consistent way. Know that somebody's gonna be there for them all the time.
(Tr. at 20.)
 {¶ 7} After counsel declined a second opportunity to question appellant, the following exchange occurred:
RALPH HINKLE: I've prayed in Jesus name that you give me dual way, when I get out, to — to prove myself. To do whatever I have to do to get my kids.
JUDGE YARBROUGH: Well, when you get out, you'll have the opportunity to hopefully see the children and establish a relationship with them. But I think it's in their best interest that the permanent custody motion be granted. Their life has to go on. Your life has been a seesaw, up and down, in and out. You're there and you're not there.
RALPH HINKLE: But not in their lives. This is only time — it's the first time —
JUDGE YARBROUGH: All right.
RALPH HINKLE: — I've not been in their life.
JUDGE YARBROUGH: Based on the history that's been solicited here, the evidence that's been solicited, I think the motion should be granted. You can step down now. Have any other witnesses?
(Tr. at 20, 21.)
 {¶ 8} Thereafter, Laura Elliott ("Elliott"), the FCCS caseworker assigned to this case since December 2001, offered testimony. Elliott stated that the Hinkle family had a history with FCCS since 1998. She testified that the current case originally opened because of possible drug allegations in the home. A later referral indicated that Tude was admitted to the hospital with bilateral pneumonia, dehydration, hypoxia and hypoglycemia. (Tr. at 23.) After Tude's admission to the hospital, FCCS obtained custody of Tude and Sunshine,[1]
and Elliott prepared a case plan in order to work with the family. To Elliott's knowledge, Ms. Hinkle had not successfully completed the case plan.
 {¶ 9} Although appellant had attempted to correspond with Elliott, she indicated that she had no contact with him during her first year as the assigned caseworker for the Hinkle children. She averred that appellant has written one letter addressed to the children per the foster parents. Elliott gave a copy of the case plan to appellant, including referrals for services for when he was released from prison. She was unable to evaluate whether or not appellant was completing any of the programs offered in prison, or if the programs would comply with appellant's requirements under the case plan.
 {¶ 10} Elliott testified as to the children's current living situation in a foster home. Elliott observed that Tude and Sunshine had formed a bond with the foster parents and were adjusting well in their current environment. Elliott noted that the foster parents were planning on adopting both Tude and Sunshine, and that it would affect the bond between the siblings if they were separated. In her assessment, Elliott asserted that the children were "desperately in need of permanency," and the possibility of the current foster family adopting Tude and Sunshine would be in their best interest. (Tr. at 30, 31.)
 {¶ 11} Elliott testified that Tude and Sunshine had been in temporary custody since May 7, 2002. Elliott offered that she did not see a bond between appellant and the children, and that placement with relatives was not possible.[2] Elliott offered that while appellant had a parole hearing scheduled for sometime in May 2004, his current release date was 2037. She did not believe that she could reunify Tude and Sunshine with appellant in the next six to 12 months.
 {¶ 12} While the guardian ad litem did not offer testimony, she requested, through closing arguments, that the court grant FCCS's motion. Thereafter, the guardian ad litem offered her report into evidence.
 {¶ 13} After closing remarks from all parties, the judge allowed appellant to make additional statements on his own behalf. Thereafter, the judge indicated that he would take the matter under advisement. (Tr. at 43.) On April 27, 2004, the trial court issued its decision and judgment entry, including findings of fact and conclusions of law, sustaining the motion to commit the Hinkle children to the permanent custody of FCCS. The judgment terminated the parental rights of both appellant and Ms. Hinkle.[3]
 {¶ 14} Appellant timely asserted the following two assignments of error:
First assignment of error
Appellant's procedural and substantive due process rights were violated when the trial Judge expressed his decision prior to hearing all the evidence.
Second assignment of error
Ohio revised code 2151.414, facially and as applied to appellant, violates appellant's substantive due process rights under article I, section 10 of the Ohio constitution and the14th amendment of the United States Constitution.
 {¶ 15} The crux of appellant's first assignment of error is the discussion set forth at page three, paragraph seven of this opinion. Appellant contends that the trial court judge made statements after his initial testimony, indicating his decision to grant the permanent custody motion before the conclusion of the evidence. Appellant asserts that the trial court was required to make specific findings pursuant to R.C. 2151.414(B), and consider relevant factors found in R.C. 2151.414(D), before granting a permanent custody motion. Consequently, appellant argues that based on the comments made by the trial court, he was denied his right to a fair trial, and the trial judge's actions were in violation of his due process rights. Further, appellant contends that the judge's comments shifted the burden to appellant to produce evidence to change his mind during the hearing, instead of the burden remaining with FCCS to establish their case by clear and convincing evidence.
 {¶ 16} FCCS and the guardian ad litem collectively argue that the trial judge's comments were an unbiased summary of the evidence presented up to that time of the trial. FCCS contends that even if we find that the comments made by the trial judge were improper, the comments were harmless and did not affect the result of the trial. In support, FCCS emphasized the evidence entered in favor of the permanent custody motion. Finally, the guardian ad litem asserts that if the judge's comments were perceived as improper, appellant's counsel should have moved for a mistrial or its equivalent under the Juvenile Rules. The guardian ad litem argues that while this remedy was not sought, it was unnecessary, considering the judge's neutral conduct for the remainder of the hearing.
 {¶ 17} In support of his position, appellant cites In reThornton (1985), 24 Ohio App.3d 152, 155, 24 OBR 241,493 N.E.2d 977, in which we found:
Appellees claim that the record contains sufficient evidence for a finding that visitation by the maternal grandparents is in Joseph's best interests. Appellees may well be correct, as the record contains substantial testimony both from the affected parties and medical personnel. Yet, conflicting testimony wasbarred by the referee's limitation of testimony. To affirm a judgment after such a one-sided hearing violates fundamental concepts of fairness and improperly vitiates the trial court's function as an impartial arbiter of the facts. A condition precedent to finding visitation to be in a child's best interests pursuant to R.C. 3109.11 is a full and complete hearing on all evidence relevant to the visitation issue.
Thus, the failure of the trial court to fully adduce all relevant evidence on the visitation issue and thereby make a determination that visitation pursuant to R.C. 3109.11 is in the child's best interests is error. (Emphasis added.)
Appellant claims that the trial judge herein, as the trial judge in Thornton, prematurely made a decision and thus acted with impropriety. We disagree.
 {¶ 18} Unlike the situation in Thornton, we find that the trial judge in this case adduced all relevant evidence prior to making his official decision to grant the permanent custody motion. The trial judge did not bar further testimony after making the comments to appellant. To the contrary, he heard evidence from Elliott, who assessed that the possibility of the current foster family adopting Tude and Sunshine would be in the best interests of the children. (Tr. at 30, 31.) While the guardian ad litem did not offer testimony, she indicated in closing arguments that she supported FCCS's motion. Moreover, after closing arguments of counsel, the judge allowed appellant to make an additional statement on his own behalf. At the close of the hearing, the judge indicated that he would take the matter under advisement. Therefore, we find appellant's reliance onThornton misplaced.
 {¶ 19} In order to conclude our determination of whether or not the trial judge's statements had any effect on his decision to grant FCCS permanent custody, we analyze the evidence as stated in the trial court's findings of fact and conclusions of law. R.C. 2151.414 provides a statutory framework for permanent custody proceedings. In its consideration of permanent custody, the court was first required to determine whether or not the children fell under any of the qualifying categories stated in R.C. 2151.414(B), which provides, in pertinent part:
(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.
 {¶ 20} In its findings, the trial court stated:
Pursuant to the statutory timelines set forth in R.C. 2151.414, Tude and Sunshine /aka/ Sunshine have been in the custody of the agency for at least eighteen months at the time of trial. Therefore, R.C. 2151.414(B)(1)(d) is applicable. Additionally, there have been periods of time in which the parents did not have contact nor visit their children sufficient to invoke the abandonment provision of R.C. 2151.414(B)(1)(b) as it pertains to both Mother and Father. Additionally, although the agency has presented clear and convincing evidence that the children have been its temporary custody for a period of greater than twelve out of a consecutive twenty-two months, the evidence also clearly and convincingly demonstrated that the parents have failed to remedy the circumstances which caused the children to be removed from their home. The parents have failed to make any substantial progress on the case plan. The children cannot be reunified with either parent within a reasonable period, nor should they be. Therefore, but for the timeline language presented in this subsection, R.C. 2151.414(B)(1)(a) is also applicable.
* * *
In view of the foregoing facts, the Court finds that R.C.2151.414(B)(1)(d), (B)(1)(b) and (B)(1)(a) are separately and independently applicable to the facts of this case. Further, this Court finds that it is in the best interest of Tude and Sunshine /aka/ Sunshine Hinkle to grant the agency's motion for permanent custody. The Court finds that continuation in the children's own home would be contrary to their welfare and that reasonable efforts have been made to prevent or eliminate the need for removal of the children from their home. Placement and casework services were provided by the agency to the family, but the removal of the children from the home continues to be necessary because the circumstances giving rise to the original filing have not been sufficiently alleviated.
(April 27, 2004 Decision at 4, 5.)
 {¶ 21} After finding clear and convincing evidence was presented to fulfill the first prong of the custody statute, the trial court then considered the best interests of the children, pursuant to R.C. 2151.414(D). In considering the trial court's decision to grant permanent custody of the Hinkle children to FCCS, this court must determine whether the record contains the requisite evidence to satisfy the clear and convincing standard.In re Wise (1994), 96 Ohio App.3d 619, 645 N.E.2d 812. Clear and convincing evidence requires that the proof "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Coffman (Sept. 7, 2000), Franklin App. No. 99AP-1376, 2000 Ohio App. LEXIS 4033, citingCross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. In determining the best interest of the child in accordance with R.C. 2151.414(D), a trial court is required to consider all relevant factors including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-ofhome providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 22} First, the trial court evaluated the relationships and interaction of the children with their parents, relatives and foster parents. In its findings, the court made reference to the testimony of appellant, finding that he lacked contact with the children. The court relied upon Elliott's testimony that the children were not bonded with their biological parents, but alternatively were bonded with their foster parents. The court also indicated that the foster parents sought to adopt Tude and Sunshine. (April 27, 2004 Decision at 4.)
 {¶ 23} Next, the trial court addressed the wishes of the children through the guardian ad litem, finding that the guardian ad litem was in support of the permanent custody motion. Ibid.
 {¶ 24} Pursuant to R.C. 2151.414(D)(3), the court then assessed the custodial history of the children and whether the children have been in custody of the agency for a period of twelve or more months of a consecutive twenty-two month period. The court found by clear and convincing evidence that the children had been in custody for at least eighteen months. Ibid.
 {¶ 25} Fourth, the court considered the children's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. The court found that no possibility existed that the children could be returned to either parent within a reasonable period of time. Further, the court found that no relatives have come forward who are willing or appropriate to care for the children. In conclusion, the court determined that no less restrictive means were available other than permanent custody to the agency. Ibid.
 {¶ 26} Finally, pursuant to R.C. 2151.414(D)(5), the court considered whether or not the factors presented in R.C.2151.414(E)(7) through (11) were applicable in relation to the children and their parents. In determining that R.C.2151.414(E)(10) was applicable, the court stated that the children's parents have effectively abandoned them. Ibid.
 {¶ 27} While the trial judge's comments may have been made prematurely and were inappropriate, we find the trial judge's remarks did not rise to a decision on the motion[4] or taint the analysis of his decision to grant the permanent custody motion. We find that FCCS established by clear and convincing evidence that the Hinkle children's best interests are served by placing them in the permanent custody of FCCS. Through the evidence adduced at the hearing, we find that the trial court correctly applied the statutory guidelines found in R.C.2151.414, and its judgment was not contrary to law. While appellant's counsel could have sought remedies during the hearing for the trial judge's comments, based on the foregoing, no remedies were necessary. Accordingly, appellant's first assignment of error is overruled.
 {¶ 28} In his second assignment of error, appellant challenges the constitutionality of R.C. 2151.414(B)(1)(d), stating that the statute creates a presumption of parental unfitness and allows the trial court to disregard a parent's constitutional right to care, custody and control of their child. While appellant concedes he did not challenge the constitutionality of the statute at the trial court level, he maintains that any waiver is discretionary and this court is permitted to address the constitutionality of the statute on appeal.
 {¶ 29} FCCS contends that constitutional issues cannot be challenged on appeal if the issues were not raised at the trial court level. In support of its position, FCCS cites In reStillman, 155 Ohio App.3d 333, 2003-Ohio-6228, 801 N.E.2d 475, in which the appellant questioned the constitutionality of R.C.2151.414(B)(1)(d), yet did not raise constitutionality of the statute at the trial court level. While the Stillman court noted that it could consider this constitutional challenge, it held that because the issue was not preserved properly for appeal, the appellant waived subsequent challenges on appeal. Id. at ¶ 30; citing State v. Schlee (Dec. 17, 1999), 11th Dist. No. 98-L-187, 1999 Ohio App. LEXIS 6136, at *27; In re M.D. (1988),38 Ohio St.3d 149, 527 N.E.2d 286.
 {¶ 30} We have recently declined to review a constitutional challenge to R.C. 2151.414(B)(1)(d) because it was not raised at the trial court level. In re Andy-Jones, Franklin App. No. 03AP-1167, 2004-Ohio-3312, discretionary appeal not allowed,103 Ohio St.3d 1429, 2004-Ohio-4524, 814 N.E.2d 491, stay denied,203 Ohio St.3d 1425, 2004-Ohio-4524, 814 N.E.2d 489. In Andy-Jones,
an emergency custody order in favor of FCCS was granted, allowing the parents supervised visitation. A case plan was developed in attempt at reunification, yet permanent commitment of the minor was sought based on the parents' lack of full compliance with the plan. The father failed to complete a drug-treatment program, a psychological evaluation, domestic violence counseling, lacked steady employment, was in and out of jail, and did not attend all of his scheduled visitations. The mother did not have stable full-time employment, had not progressed in her mental health counseling, did not have appropriate parenting skills, and did not have a bond with her son. The minor had bonded to his foster family, which included his biological brother.
 {¶ 31} In their appeal of the court's award of permanent custody to FCCS, the appellants in Andy-Jones argued that R.C.2151.414(B)(1)(d) was "unconstitutional as it creates an irrebuttable presumption of parental unfitness where a child has been in the temporary custody of a public children services agency or private child placement agency for 12 or more months of a consecutive 22-month period." Id. at ¶ 18. While we noted that we have discretion to review a constitutional issue not raised at the trial court level, based on the record, we declined to do so. Id. at ¶ 20.
 {¶ 32} In keeping with this precedent, we decline to address the constitutionality of R.C. 2151.414(B)(1)(d), based on the facts herein. Furthermore, we note that in its initial consideration of the factors found in R.C. 2151.414(B)(1)(a) through (d), the trial court did not analyze this decision solely based on the amount of time the children were in the custody of FCCS pursuant to 2151.414(B)(1)(d). The judge indicated that R.C.2151.414(B)(1)(b) and (B)(1)(a) were separately and independently applicable and cited to evidence to support his reasoning. Because appellant waived his constitutional challenge to R.C.2151.414(B)(1)(d) by not properly preserving it for our review, we overrule appellant's second assignment of error.
 {¶ 33} Having overruled appellant's first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in granting permanent custody to FCCS of Tude Wayne Roger Jay Hinkle and Sunshine Cierra Hinkle.
Judgment affirmed.
Lazarus, P.J., and French, J., concur.
[1] FCCS also obtained custody of three older children, including Teela Basnett, Jonathan Basnett, and Jennifer Basnett, who are not the subject of the permanent custody motion.
[2] Elliott testified that a prior placement of the children with Becky Kniser, a relative, ended after allegations of physical abuse and her subsequent refusal to sign a safety plan not to use any physical discipline. No other relatives have been willing or appropriate to care for the children.
[3] The parental rights of Ms. Hinkle are not the subject of this appeal.
[4] It is axiomatic that in Ohio, a court speaks through its journal entries. State v. McLaughlin, 157 Ohio App.3d 1,2004-Ohio-1780, 808 N.E.2d 893, at ¶ 7, citing State ex rel.Worchester v. Donnellon (1990), 49 Ohio St.3d 117, 118,551 N.E.2d 183, rehearing denied, 50 Ohio St. 3d 709,553 N.E.2d 691.