OPINION
{¶ 1} Petitioners-appellants, Linda Flory and Tammy Garland, appeal a decision of the Warren County Court of Common Pleas, Juvenile Division ("the juvenile court"), denying their petition for visitation with Cameron and Brooklyn Busdiecker ("the children"). We affirm the juvenile court's decision.
 {¶ 2} The children were born on January 30, 1995. Linda is the children's paternal grandmother, Tammy, their paternal aunt. The children's biological parents, Darin Long and respondent-appellee, Lisa Busdiecker, were married in May 1995. In March 1996, Darin died in an automobile accident. In December 1997, Lisa married respondent-appellee, Todd Busdiecker.
 {¶ 3} In October 1998, Linda filed a petition for visitation with the children in the Montgomery County Court of Common Pleas, Juvenile Division. Two months later, Todd filed a petition with the Montgomery County Court of Common Pleas, Probate Division, to legally adopt the children as his own. In March 1999, Todd's petition was granted. In August 1999, the Montgomery County Juvenile Court dismissed Linda's visitation petition on the ground that neither the case law nor the statutory provisions then applicable (R.C. 3107.15, 3109.11, and 3109.051) provided a post-adoption right of grandparent visitation.
 {¶ 4} The three Revised Code sections were subsequently amended, effective March 22, 2001. On July 5, 2001, Linda and Tammy filed a petition for visitation with the children in the juvenile court. In response to the petition, Lisa and Todd moved for summary judgment on the basis, inter alia, that the amendments to R.C. 3107.15 and 3109.11 did not retroactively apply to children adopted prior to the amendments' effective date. By decision and entry filed August 28, 2002, the juvenile court dismissed appellants' visitation petition. The juvenile court found that the amendments to R.C. 3107.15 and 3109.11 "apply only prospectively and may not constitutionally be applied to children adopted prior to the amendment's effective date." This appeal follows in which appellants raise two assignments of error.
 {¶ 5} In their first assignment of error, appellants argue that the juvenile court's finding that Lisa and Darin were never married was an abuse of discretion, against the manifest weight of the evidence, or prejudicial to appellants.
 {¶ 6} Although Lisa, in an affidavit filed in the juvenile court, stated that she and Darin were married on May 26, 1995, and although the magistrate, in a decision filed in the juvenile court in December 2001, found that Lisa and Darin were married, the juvenile court, inexplicably, found that they were never married. Although erroneous, the juvenile court's finding does not warrant a reversal of its decision. Darin's paternity is not disputed. Likewise, it is not disputed that his parental rights had never been terminated prior to his death. Further, the finding was not germane to the ultimate issue before the juvenile court, that is, whether newly amended R.C. 3107.15 and 3109.11 apply retroactively. Appellants' first assignment of error is accordingly overruled.
 {¶ 7} In their second assignment of error, appellants argue that the trial court erred by dismissing their petition for visitation with the children. Specifically, appellants first assert that the trial court improperly relied on the Ohio Supreme Court's decision in In re Adoptionof Ridenour (1991), 61 Ohio St.3d 319, a decision involving third-party stranger adoption, when it dismissed their petition. Appellants also assert that the amended Revised Code sections may constitutionally apply retroactively because (1) the General Assembly intended the amendments to apply retroactively, and (2) the amendments harmonize the previously conflicting sections and are therefore curative and remedial. Finally, appellants assert that Todd never had a vested right following his adoption of the children. As a result, he could not reasonably expect to prevent future contact between the children and their natural parental family.
 {¶ 8} We begin our analysis with an examination of the three Revised Code sections as they were written before they were amended. First, R.C. 3107.15 governs the effect of adoption and stated in relevant part that:
 {¶ 9} "(A) A final decree of adoption * * * shall have the following effects as to all matters within the jurisdiction or before a court of this state * * *: (1) [e]xcept with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and the adopted person's relatives, * * * so that the adopted person thereafter is a stranger to the adopted person's former relatives for all purposes * * *.
 {¶ 10} "* * *
 {¶ 11} "(B) Notwithstanding division (A) of this section, if a parent of a child dies without the relationship of parent and child having been previously terminated and a spouse of the living parent thereafter adopts the child, the child's rights from and through the deceased parent for all purposes, * * * are not restricted or curtailed by the adoption."
 {¶ 12} Thus, pursuant to division (A), the effect of an adoption was to create the legal fiction that the child was no longer, in any way, related to the parent who had relinquished parental rights, and had in effect become the biological child of the adoptive parent. When the parent of a child died, as in the case now before the court, without the parent-child relationship having been terminated, division (B) controlled to allow the child to still inherit from the deceased parent or that parent's relatives in spite of any subsequent adoption. Ohio courts have read this provision as preserving the child's rights, rather than preserving any rights that any relatives of the deceased parent might have with respect to the child. See, Beard v. Pannell (1996),110 Ohio App.3d 572.
 {¶ 13} Next, R.C. 3109.11 governs visitation rights of grandparents and other relatives when a parent is deceased, and provided that:
 {¶ 14} "If either the father or mother of an unmarried minor child is deceased, the court of common pleas * * * of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother * * * visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable * * * visitation rights and if the court determines that the granting of the * * * visitation rights is in the best interest of the minor child. * * *.
 {¶ 15} "The remarriage of the surviving parent of the child does not affect the authority of the court under this section to grant reasonable * * * visitation rights with respect to the child to a parent or other relative of the child's deceased father or mother."
 {¶ 16} While R.C. 3109.11 expressly provided that a surviving parent's remarriage did not affect a relative of a deceased parent's right to visitation, the statute was silent as to how a stepparent adoption affected the relative of a deceased parent's visitation rights. Foor v.Foor (1999), 133 Ohio App.3d 250, 252.
 {¶ 17} Finally, R.C. 3109.051 provided that grandparents may be granted visitation rights in divorce, dissolution of marriage, legal separation, or annulment proceedings. Again, like R.C. 3109.11, the statute was silent about grandparents' rights to visitation following an adoption.
 {¶ 18} In 1991, the Ohio Supreme Court decided Ridenour, which involved a stranger adoption rather than a stepparent adoption. Upon examination of Ohio's adoption statute, R.C. 3107.15, the court concluded that "[o]n its face, this statute suggests that the children's relationship with their biological grandparents must be terminated once they are adopted." Id., 61 Ohio St.3d at 325. The supreme court further noted that while Ohio's statutory framework allowed grandparent visitation after a divorce or a parental death, "[t]he statutes contain no reference to adoption." Id. at 326.
 {¶ 19} Then, in 1994, the supreme court was asked to decide In reMartin, 68 Ohio St.3d 250, 1994-Ohio-506, which involved paternal grandparent visitation following an adoption of the child by the maternal grandparents, that is, "nonstrangers." Although the court denied visitation to the paternal grandparents on the ground that the biological father had failed to establish paternity before his death, the court nevertheless addressed the parties' contentions. Specifically, the court was asked to distinguish between adoptions by strangers and adoptions by nonstrangers and to limit the reach of Ridenour. Emphasizing the fact that grandparent visitation rights are purely statutory in nature, the court declined to make the distinction and to limit Ridenour, finding instead that "R.C. 3107.15 simply does not distinguish between adoptions by strangers and nonstrangers." Martin at 254.
 {¶ 20} Appellants correctly state that the supreme court has never addressed the issue of whether a stepparent adoption terminates a grandparent's right to visitation when the parental rights of the deceased parent were never terminated prior to his death. The issue, however, has been decided by several Ohio appellate courts, including this court.
 {¶ 21} In Beard, the biological parents were married and had one child. Following their divorce, the biological father committed suicide. At some point, the biological mother remarried. One year after their son's death, the paternal grandparents filed a petition for visitation. The child's stepfather subsequently legally adopted the child as his own. The paternal grandparents' petition was then dismissed. The Sixth Appellate District upheld the dismissal of the grandparents' petition for visitation as follows:
 {¶ 22} "The Ohio Supreme Court, in interpreting R.C. 3107.15(A)(1), has stated that a stepparent adoption terminates a child's relationship with the biological grandparents for all purposes. In re Martin (1994),68 Ohio St.3d 250, 254[.] Thus, grandparents lose visitation rights when their child is no longer the legal parent of their grandchild.
 {¶ 23} "Appellants ask this court to distinguish In re Martin and other Ohio Supreme Court cases that disallowed grandparent visitation because in this case the adoption occurred after the death of one of the natural parents. Appellants argue that R.C. 3107.15(B) applies in this situation, rather than R.C. 3107.15(A). However, appellants misread this statute because it preserves the child's rights that flow from and through the deceased parent and is not applicable to visitation." Beard,110 Ohio App.3d at 574-575.
 {¶ 24} In Foor, the biological parents were married and had four children. Following her divorce with the biological father, the biological mother married her current husband. After the biological father died, the stepfather legally adopted the four children as his own. The trial court denied the paternal grandparents' petition for visitation with the children, finding it lacked the authority to grant grandparent visitation following a stepparent adoption. Relying on the supreme court's decisions in Ridenour and Martin, we upheld the trial court's decision as follows:
 {¶ 25} "When the Supreme Court has been presented the opportunity to rule on this issue in the past, it has consistently declined to do so, stating unequivocally that any changes in this area of the law must emanate from the General Assembly. Reluctantly, we find that we are in no position to disagree. Accordingly, the trial court did not err when it determined that it did not have the authority to grant grandparent visitation." Foor, 133 Ohio App.3d at 255-256. In light of the foregoing, we therefore find that the trial court did not improperly rely on Ridenour in dismissing appellants' petition.
 {¶ 26} The three Revised Code sections at issue were then amended effective March 22, 2001. We note that the amendments did not modify in any way the language of the provisions previously quoted. Rather, the amendments added new provisions and/or new language to the existing provisions, thereby establishing a right of grandparent and other relative visitation after adoption by a stepparent. Specifically, R.C. 3107.15(C) now provides that "if the relationship of parent and child has not been terminated between a parent and that parent's child[,] and a spouse of the other parent of the child adopts the child, a grandparent's or relative's right to companionship or visitation pursuant to [R.C.] 3109.11
is not restricted or curtailed by the adoption."
 {¶ 27} Likewise, R.C. 3109.11 now provides that "the adoption of the child by the spouse of the surviving parent of the child does not affect the authority of the court under this section to grant reasonable companionship or visitation rights with respect to the child to a parent or other relative of the child's deceased father or mother." R.C.3109.051(D) simply adds "the wishes and concerns of the child's parents" to the list of factors a court must consider in determining whether to grant grandparent visitation in divorce, dissolution, legal separation, or annulment proceedings.
 {¶ 28} Appellants assert that the foregoing amendments constitutionally apply retroactively to children adopted prior to the amendments' effective date. We disagree.
 {¶ 29} Section 28, Article II of the Ohio Constitution prohibits the General Assembly from passing retroactive laws. Revised Code 1.48
codifies the long-standing rule that "[a] statute is presumed to be prospective in its operation unless expressly made retroactive." The issue of whether a statute may constitutionally be applied retroactively "requires the court first to determine whether the General Assembly expressly intended the statute to apply retroactively. * * * If so, the court moves on to the question of whether the statute is substantive, rendering it unconstitutionally retroactive, as opposed to merely remedial." Bielat v. Bielat, 87 Ohio St.3d 350, 353, 2000-Ohio-451. Thus, "inquiry into whether a statute may constitutionally be applied retrospectively continues only after a threshold finding that the General Assembly expressly intended the statute to apply retrospectively." Id. "[A]bsent a clear pronouncement by the General Assembly that a statute is to be applied retrospectively, a statute may be applied prospectively only." State v. LaSalle, 96 Ohio St.3d 178, 2002-Ohio-4009, at ¶ 14.
 {¶ 30} Upon reviewing the amendments to R.C. 3107.15, 3109.11, and3109.051, we find that there is no language in the amendments that they are to be applied retroactively. "In drafting prior legislative enactments and amendments, the General Assembly certainly has demonstrated its ability to include retrospective language when it so desires." Id. at ¶ 15. It has failed to do so in the amendments at issue. We therefore hold that the amendments to R.C. 3107.15, 3109.11, and 3109.051 apply prospectively only to children adopted after the amendments' effective date, March 22, 2001. This ends our inquiry. We need not reach the constitutional question.
 {¶ 31} Finally, appellants assert that because the law in Ohio regarding grandparents' right of visitation following a stepparent adoption was "not clear cut until after March 22, 2001," Todd never had a vested right following his adoption of the children. As a result, he could not reasonably expect to prevent future contact between the children and their natural parental family.
 {¶ 32} Appellants' argument flies in the face of R.C. 3107.15(A) which specifically provides that "[a] final decree of adoption * * * shall * * * (1) [e]xcept with respect to a spouse of the petitioner and relatives of the spouse, * * * relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and * * * terminate all legal relationships between the adopted person and the adopted person's relatives, * * * so that the adopted person thereafter is a stranger to the adopted person's former relatives for all purposes * * *, and (2) [c]reate the relationship of parent and child between petitioner and the adopted person, as if the adopted person were a legitimate blood descendant of the petitioner, for all purposes * * *."
 {¶ 33} On the date of the Montgomery County Probate Court's final order of adoption, Todd's status was parent of the children. He had a duty to support them and they had the right to compel that duty. These were vested duties and rights. See In re Adoption of Holtel (Aug. 11, 1987), Athens App. No. 1267. Merely because Ohio law regarding post-stepparent adoption right of grandparent visitation "was not clear-cut until March 22, 2001," does not mean that Todd did not have a vested right. To accept appellants' argument would render any enactment or amendment meaningless; one would never have an expectation of finality unless and until the appellate courts were in agreement or the supreme court addressed a particular issue.
 {¶ 34} In light of the foregoing, we find that the juvenile court did not err by denying appellants' petition for visitation with the children. Appellants' second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.